IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel., and FLFMC, LLC., | ) Civil Action No. 2:10-cv-00435 ) ) Honorable Arthur J. Schwab |
| Plaintiffs, | ) ) |
| v. | ) ) **ELECTRONICALLY FILED** |
| WHAM-O, INC., | ) ) |
| Defendant. | ) ) ) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

**I.  INTRODUCTION**

This putative *qui tam* action under the False Patent Marking statute, 35 U.S.C. § 292 ("§292") should be dismissed for the following independent reasons:

A.  Plaintiff FLFMC, LLC ("Plaintiff") was required by *Fed. R. Civ. P.* 9(b) and *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"), to state with particularity facts giving rise to a strong inference that Wham-O acted with the intent to deceive the public. The cases hold that a plaintiff has a "high bar" to prove such intent to deceive and that a defendant's mere knowledge that a product is marked with an expired patent is insufficient. Plaintiff's sparse and conclusory "information and belief" complaint is insufficient.

B.  Plaintiff lacks both constitutional and prudential standing and cannot carry its burden to meet the constitutional minimum of standing under either a facial or factual challenge to subject matter jurisdiction. Facially, Plaintiff alleges no injury or harm. A newly formed entity, it simply cannot plead any set of facts showing that it has suffered a "concrete and particularized" injury, nor does it or can it allege such an injury was inflicted on the United States. Thus, it cannot withstand a factual challenge as well. Plaintiff cannot establish

1

prudential standing because a *qui tam* plaintiff cannot sue based only on the government's generalized sovereign right to have §292 – *a criminal statute* – obeyed.

    C.    Section 292(b) is unconstitutional because it presumes that a plaintiff could enforce the rights of the United States government, *without its participation or supervision*. The Constitution, under Article II's "Take Care" and "Appointments" clauses, requires the Executive Branch, through the Attorney General, to retain control over all litigation commenced with the government as the real party in interest. Accordingly, §292(b) cannot survive constitutional scrutiny. Plaintiff has no injury in fact and seeks to enforce only the "sovereign's interest" in a criminal statute, without basic safeguards or controls to ensure government oversight.

## II.   LEGAL ARGUMENT

### A.   The Complaint Must Be Dismissed As Plaintiff Has Failed To Plead Its Claim With Specificity.

Pursuant to *Fed. R. Civ. P.* 12(b)(6), this Court is required to dismiss the complaint in the absence of sufficient facts alleged under a cognizable legal theory. *Marangos v. Swett*, 341 Fed. Appx. 752, 755 (3d Cir. 2009).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Twombly*], at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (U.S. 2009). Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .

2

*Id.*, at 1950. The Court is *not* required to accept as true "bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).

Moreover, the requirements of *Fed. R. Civ. P.* 9(b) apply to the case at bar.

> The false marking statute is a fraud-based claim, which is subject to the pleading requirements of Federal Rule of Civil Procedure 9(b). *See Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982, 987 (9th Cir. 2008) ("[p]laintiffs must 'state with particularity facts giving rise to a strong inference' that defendants acted with the intent to deceive....") (emphasis added); see also *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (claims that are "grounded in fraud" or that "sound in fraud" are subject to Rule 9(b)). . .**conclusory allegations that [the defendant] "knew" his reference to the patents was "false" are thus insufficient to plead an intent to deceive under section 292(a).**

*Juniper Networks v. Shipley*, 2009 U.S. Dist. LEXIS 40978 (N.D. Cal. May 13, 2009) (emphasis added).

Plaintiff ignores the requirements articulated in *Twombly* and *Fed. R. Civ. P.* 9(b) by failing to "state with particularity facts giving rise to a strong inference" that Wham-O acted with the intent to deceive or with deliberate recklessness as to the possibility of misleading the public. *See Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 267 (3d Cir. 2009).

As recently confirmed by the Federal Circuit in *Pequignot v. Solo Cup Co.*,

> The bar for proving deceptive intent here is particularly high, given that the false marking statute is a criminal one, despite being punishable only with a civil fine. See S. Rep. No. 82-1979, 1952 U.S.C.C.A.N. 2394 (1952) ("This is a criminal provision."); see also *Clontech [Labs., Inc. v. Invitrogen Corp.]*, 406 F.3d [1347], 1352 [(Fed. Cir. 2005)] ("The statute supplies a civil fine."). Because the statute requires that the false marker act "for the purpose of deceiving the public," a purpose of deceit, rather than simply knowledge that a statement is false, is required. 35 U.S.C. § 292(a). . . . Thus, mere knowledge that a marking is false is insufficient to prove intent if Solo can prove that it did not consciously desire the result that the public be deceived.

---- F.3d ----, 2010 WL 2346649 at *6 (Fed. Cir. June 10, 2010).

Here, Plaintiff's sparse 20 paragraph complaint alleges only that:

> 16.  After November 1, 1985, Defendant or its agents marked upon, affixed to, or used in advertising in connection with items, including at least the Frisbee® Flying Disc, phrases referring to the '678 patent, implying that the item was patented.
>
> 17.  Defendant or its agents did so for the purpose of deceiving the public.

(Compl., ¶¶ 16-17).[1]  These conclusory allegations, made without *any* underlying facts from which the Court may reasonably infer that Wham-O acted with the requisite state of mind, are insufficient under Rule 8, let alone the heightened pleading requirements of Rule 9(b). *See In Re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) ("While state of mind may be averred generally, plaintiff must still allege facts that show the court their basis for inferring that the defendants acted with 'scienter.'"). Rather, they are precisely the "formulaic recitation of the elements of a cause of action [that] will not do...." *Twombly*, 127 S.Ct. at 1965.

### B. The Action Should Be Dismissed As This Court Lacks Subject Matter Jurisdiction.

#### 1. Standing In Federal Court

"[N]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Common Cause v. Pennsylvania*, 558 F.3d 249, 258 (3d Cir. 2009) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). "If a dispute is not a proper case or controversy, the courts have no business deciding it." *Id.* at 258 (citation omitted). That case or controversy requirement is satisfied "only where a plaintiff has standing." *Sprint Commc'ns Co.*

---

[1] Plaintiff repeats identical averments in Paragraphs 19 and 20 as to the '4,678 patent.

v. *APCC Servs., Inc.*, 128 S. Ct. 2531, 2535 (2008). Standing has both constitutional and prudential components. *Kowalski v. Tesmer*, 543 U.S. 125, 128 (2004). Simply put, standing to sue in federal court is a threshold issue for a plaintiff to bring suit, an "*irreducible constitutional minimum*," and the burden of every plaintiff in federal court to prove. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

### 2. Plaintiff Lacks Facial and Factual Standing to Bring This Action.

Plaintiff bears the burden of proving standing and because it is an issue of subject matter jurisdiction it cannot be waived. *Revell v. Port Auth. of N.Y. & N.J.*, 321 Fed. Appx. 113, 116; *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003)). This Court is authorized to dismiss a lawsuit for lack of subject matter jurisdiction. *Fed. R. Civ. P.* 12(b)(1); *Fields v. Pa. Dep't of Corr.*, 2006 WL 1285030 at *1 (E.D. Pa. May 5, 2006). In determining whether Plaintiff has standing, the Court "must consider its specific allegations and the relief which it seeks." *Revell*, 321 Fed. Appx. at 116 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983)).

Additionally, the Court must distinguish between *facial* and *factual* challenges to its subject matter jurisdiction. *Fields*, WL 1285030 at *1 (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "In a facial attack, a defendant argues that the plaintiff did not properly plead jurisdiction" whereas "a 'factual' attack asserts that jurisdiction is lacking on the basis of facts outside of the pleadings." *Fields*, WL 1285030 at *1 (citing *Smolow v. Hafer*, 353 F. Supp. 2d 561, 566 (E.D. Pa. 2005) and *Mortensen*, 549 F.2d at 891). As explained by the Eastern District of Pennsylvania:

> In a facial attack, a defendant argues that the plaintiff did not properly plead jurisdiction, and the Court must consider the allegations in the complaint as true. However, a "factual" attack asserts that jurisdiction is lacking on the basis of facts outside of

> the pleadings, and it invokes the Court's authority to consider any affidavits and other evidence submitted. For both categories of attack, a plaintiff has the burden of proving jurisdiction.

*Smolow*, 353 F. Supp. 2d at 566 (internal citations omitted). Plaintiff fails to satisfy subject matter jurisdiction for *facial* and *factual* reasons.

### (a) **Plaintiff Does Not Have Constitutional Standing to Bring This Lawsuit.**

In order to have constitutional standing, a plaintiff must adequately establish:

> (1) an injury in fact (i.e., a "concrete and particularized" invasion of a "legally protected interest"); (2) causation (i.e., a "fairly traceable" connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is "likely" and not "merely speculative" that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit).

*Sprint Commc'ns Co.*, 128 S. Ct. at 2535.

#### (i) **Plaintiff Has Not and Cannot Plead an Injury-in-Fact.**

The first requirement – an injury in fact – is the "hard floor of Article III jurisdiction that cannot be removed by statute." *Summers v. Earth Island Inst.*, 129 S. Ct. 1142, 1152 (2009); *Stauffer v. Brooks Bros.*, 615 F. Supp. 2d 248, 253-54 (S.D.N.Y. 2009) (dismissing with prejudice a false marking complaint because the relator (a lawyer) failed to establish standing).[2] A *qui tam* plaintiff tries to vindicate the government's rights, provided it has itself suffered an injury in fact causally connected to the defendant that is likely to be redressed by the court. *Vermont Agency of Natural Res. v. United States ex. rel. Stevens*, 529 U.S. 765, 774 (2000).

Plaintiff must thus allege "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. Because "[federal] judicial power exists only to redress or otherwise to protect against

---

[2] The Brooks Brothers decision, which is consistent with the well-developed body of law addressed in this Brief, is currently before the Federal Circuit. *See Stauffer v. Brooks Bros., Inc.*, App. Docket Nos. 09-1428, -1430, -1453.

6

injury to the complaining party,... [federal jurisdiction] can be invoked only when the plaintiff himself has suffered some threatened or actual injury resulting from the putatively illegal action." *Newark Branch, NAACP v. Harrison*, 907 F.2d 1408, 1412-18 (internal citation omitted) (quoting *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 (1973)).

The *Brooks Brothers* decision is compelling and analogous to the events giving rise to this lawsuit. There, a patent attorney filed suit against Brooks Brothers for alleged false patent marking of bow-ties with an expired patent in violation of §292. 615 F. Supp. 2d at 250. The 40 page complaint failed to allege with any specificity an actual injury to any individual competitor, to the market for bow ties, or to any aspect of the United States economy. *Id.* at 255.

Noting that plaintiff's allegations were made largely on "information and belief" with no factual support (*id.*, at 252), the Court held that plaintiff failed to allege a "cognizable injury in fact to the United States or such an injury to the public that has been assigned to him by the government, and therefore held that he lacked constitutional standing to bring a claim under §292." *Id.* at 255. Even *qui tam* plaintiffs "must satisfy the 'irreducible constitutional minimum' of standing." *Id.* at 253 (citing *Vermont Agency*, 529 U. S. at 771)). The court reasoned that plaintiff's alleged injury was insufficient to establish an injury-in-fact to the public and therefore, he did not have standing to bring suit on behalf of the United States. *Id.*, at 255:

> That some competitor might somehow be injured at some point, or that some component of the United States economy might suffer some harm through defendants' conduct, is purely speculative and plainly insufficient to support standing.

*Id.* Because plaintiff failed to establish that Brooks Brothers' alleged "conduct caused an actual or imminent injury in fact to competition, to the United States economy, or the public that could be assigned to him as a *qui tam* plaintiff or be vindicated through this litigation," plaintiff lacked standing to proceed. *Id.*, at 256.

The facts here are even more compelling. The complaint there was 40 pages long

7

whereas Plaintiff's complaint is barely four; and, unlike Plaintiff who has not alleged injury, the Brooks Brothers plaintiff made generalized assertions that competition in the marketplace had been quelled by false marking. However, Plaintiff has not alleged any injury to itself or even to a competitor. Indeed, it is factually impossible for Plaintiff to contend that it was injured by Wham-O's alleged conduct when Plaintiff had only existed for 61 days at the time that it filed this lawsuit (FLFMC, LLC was created January 29, 2010). *See Lujan*, 504 U.S. at 566 ("Standing is not 'an ingenious exercise in the conceivable ... [but] requires ... perceptible harm." (citations omitted)). Plaintiff also does not allege any injury to the United States resulting from the alleged false marking, demonstrating that it does not have standing to bring this case.

Plaintiff may rely upon the *Pequignot v. Solo Cup Co.*, 640 F. Supp. 2d 714 (E.D. Va. 2009)[3] decision which intimated that a *qui tam* plaintiff might have standing under §292 based solely on an alleged violation of the law. *Solo Cup*, 640 F. Supp. 2d at 720. However, the Court did not address in detail the standing issue. Rather, the court in *Solo Cup* focused on whether: (1) §292 was a *qui tam* statute; and (2) §292 violated Article II of the constitution. *Id.*, at 720-728.

*Solo Cup's* passing reference to standing when ruling on other issues does not cure Plaintiff's lack of standing here. Moreover, the *Solo Cup* court's comment actually conflicts with the Supreme Court decisions and other authority discussed above. *Solo Cup's* reasoning incorrectly interpreted the United States Supreme Court's discussion of *qui tam* standing under the False Claims Act in the *Vermont Agency* case.

The Court in *Solo Cup* contended that *Vermont Agency* did not distinguish sovereign injury from proprietary injury when it actually did. *Id.*, at 724, n.15. The Supreme Court reasoned that "the injury to its sovereignty arising from the violation of its laws (which suffices to support a criminal lawsuit by the Government) and the proprietary injury resulting from the

---

[3] The *Solo Cup* court ultimately granted summary judgment in Solo Cup's favor holding that the plaintiff could not show that Solo Cup acted with the intent to deceive. See *Pequignot v. Solo Cup Co.*, 646 F. Supp. 2d 790 (E.D. Va. 2009). The Federal Circuit recently affirmed in part and vacated in part the district court's decision to grant summary judgment in favor of the Solo Cup. --- F.3d ----, 2010 WL 2346649 (Fed. Cir. June 10, 2010).

alleged fraud" are different concepts. *Vermont Agency*, 529 U. S. at 771. Importantly, according to the Supreme Court, only the proprietary injury could be assigned to a private party for constitutional standing purposes. *Id.* at 773 ("effecting a partial assignment of the Government's damages claim"). However, *Vermont Agency* did not hold that a sovereign injury could be assigned to a private party for constitutional standing purposes. The *Brooks Brothers* court noted that specific fact when it also distinguished the *Solo Cup* decision:

> Even assuming that a violation of the United States' "sovereign interest" in seeing the law followed could be an assignable interest potentially vindicated by a *qui tam* action, in order for section 292 to be violated, a defendant must not only have falsely marked an unpatented article but must have done so "for the purpose of deceiving the public." 35 U.S.C. §292. Accordingly, . . .absent an alleged injury in the form of deception to the public, a plaintiff has not alleged a violation of the law, and therefore there exists no corresponding harm to the United States' "sovereign interest." Thus, allegations such as plaintiff's that a defendant improperly marked an unpatented article as patented, standing alone, neither alleges a violation of section 292 nor pleads an injury in fact to the sovereign interest of the United States assignable to a *qui tam* plaintiff. Moreover, the Court doubts that the Government's interest in seeing its laws enforced could alone be an assignable, concrete injury in fact sufficient to establish a *qui tam* plaintiff's standing. *See FEC v. Akins*, 524 U.S. 11, 24, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998) (An "abstract" harm such as "injury to the interest in seeing that the law is obeyed ... deprives the case of the concrete specificity" necessary for standing) (collecting cases).

*Brooks Brothers*, 615 F. Supp. 2d at 254, n.5.

The purported violation of §292 here is the precise type of sovereign injury which does not seek to redress or deter acts of alleged financial fraud. Therefore, plaintiff's bringing §292 actions do not enjoy the same type of *qui tam* standing as a plaintiff under the FCA. Section 292 invokes the Government's sovereign interest where the FCA protects the proprietary interest. As such, plaintiffs bringing lawsuits under the FCA (such as those in *Vermont Agency*) have standing without injury to themselves because they are protecting the proprietary interest of the United States. However, plaintiffs bringing §292 claims invoke (at best) only the sovereign interest and therefore must meet the regular standing requirements which include injury-in-fact.

9

§292(b) does not confer standing on those without injury. As such, FMFLC cannot circumvent Article III standing by merely characterizing the action as "*qui tam.*" *See, e.g., United States ex rel. Berge v. Bd., of Trustees*, 104 F.3d 1453, 1458 (4th Cir. 1997) (stating that the government, as the real party in interest under the FCA, must still have suffered an injury in fact.).

### (ii) Plaintiff Cannot Establish Causation or a Redressable Remedy.

Since Plaintiff has not (and cannot) establish an injury-in-fact to itself or the United States, the standing analysis need not go further. Indeed, Plaintiff cannot establish a causal link between an injury-in-fact and redressability because no injury-in-fact exists under the standing analysis. For the same reason, Plaintiff cannot show that a remedy is likely to redress the alleged injury – the third prong of the constitutional standing analysis – because it would still lack standing as the remedy that it seeks (monetary penalties plus costs and attorney's fees) would not redress any alleged harm resulting from false marking. Rather, Plaintiff is attempting to profit from a perfect storm: a relatively forgotten statute coupled with a recent favorable decision from the Federal Circuit providing for large potential windfall financial recoveries.

### (ii) Plaintiff Cannot Demonstrate Prudential Standing.

Even if Plaintiff could meet its burden of establishing constitutional standing, it must also demonstrate prudential standing. Plaintiff must show that: (1) it asserts its own rights, not those of third parties; (2) its claim is not a general grievance shared equally and generally by all or a large class of citizens; and (3) its injury is within the zone of interests the statute or common law claim intends to protect. *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004).

The Supreme Court has routinely "refrained from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." *Valley Forge Christian Coll.*, 454 U.S. 464, 475 (quoting *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975)). *See also Massachusetts v.*

*E.P.A.*, 549 U.S. at 516-17 ("We will not ... entertain citizen suits to vindicate the public's nonconcrete interest in the proper administration of the laws."); *Lance v. Coffman*, 549 U.S. 437, 442 (2007) (per curiam) (noting that the "[t]he only injury plaintiffs allege is that the law ... has not been followed. This injury is precisely the kind of undifferentiated, generalized grievance about the conduct of government that we have refused to countenance in the past."); *Lujan*, 504 U.S. at 573-74 ("We have consistently held that a plaintiff raising only a generally available grievance about government--claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large--does not state an Article III case or controversy."); *Goode v. City of Philadelphia*, 539 F.3d 311, 322 (holding taxpayers lacked standing to assert claims based upon generalized injury that all persons in Philadelphia suffered).

Plaintiff lacks prudential standing as it is merely asserting a generalized right to have §292 obeyed. *Common Cause*, 558 F.3d at 259-260 ("The abstract nature of the harm--for example, injury to the interest in seeing that the law is obeyed--deprives the case of the concrete specificity ... which ... prevents a plaintiff from obtaining what would, in effect, amount to an advisory opinion.") (citing *Akins*, 524 U. S. at 23 (quotation omitted)). Such an attempt to enforce a generalized grievance is the exact type of claim routinely rejected for lack of standing.

### 3. Plaintiff Also Lacks Standing As Section 292(b) Is Unconstitutional.

A private party that purports to assert §292(b) on behalf of, but without the participation of, the United States, cannot do so because it would violate Article II's "Take Care" Clause and "Appointments" Clause. Section 292(b) states, "[a]ny person may sue for the penalty, in which event one-half shall go to the person suing and the other to the use of the United States." This statute, however, is radically different than traditional *qui tam* statutes. In typical *qui tam* statutes, like the FCA, the plaintiff or "relator" initiates the action on behalf of the United States

11

but the government has both the right to intervene and the ability to maintain control over the action. *United States ex rel. Landsberg v. Levinson*, 2006 WL 895044 at * (W.D.Pa.. Mar. 29, 2006) (in a *qui tam* action, "the government remains the real party in interest" even where it declines to intervene) (citing *United States ex rel. Zissler v. Regents of Univ. of Minn.*, 154 F.3d 870, 872 (8th Cir. 1988)). Although the FCA relator has not suffered an actual injury, a *qui tam* statute "'effect[s] a partial assignment of the Government's damages claim'" which confers standing to the relator. *Sprint Commc'n Co., L.P.*, 128 S.Ct. at 2542 (2008) (quoting *Vermont Agency*, 528 U.S. at 773). *See also, United States ex rel. Banks v. Aramark Correctional Servs.*, 2008 WL 3833459 at *4 (W.D. Pa. Aug. 15, 2008) ("A relator bringing a *qui tam* action is representing the interests of the government and prosecuting the action on its behalf") (quoting *Stoner v. Santa Clara County Office of Educ.*, 502 F.3d 1116, 1126 (9th Cir. 2007)).

Here, Plaintiff is seeking to bring its claim *without* alleging any injury in fact, and *without* the ability to allege an injury to the United States. To bring its claim under §292 would, therefore, violate Article II's "Take Care" and "Appointments" Clauses. The "Take Care" Clause states that the Executive must "take care that the Laws be faithfully executed." U.S. Const. art. II, § 3. The "Appointments" Clause states that the Executive has the power "to make Treaties, provided two thirds of the Senators present concur; and he shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States." *Id.*, § 2.

These clauses require the Executive Branch, through the Attorney General, to retain control over all litigation commenced where the Government is the real party in interest. *Buckley v. Valeo*, 424 U.S. 1, 138-39 (1976). As §292 is vesting in a private party the "primary responsibility for conducting civil litigation in the courts of the United States for vindicating

public rights", as opposed to the Executive Branch, the statute is unconstitutional. *See Id.* at 140.

The Supreme Court has explained the proper analysis for courts to apply when assessing whether Congress has unconstitutionally diminished executive power by permitting private plaintiffs to sue in the name of the United States. *See Morrison v. Olson*, 487 U.S. 654 (1988). In *Morrison*, the issue before the Court was whether the Ethics in Government Act of 1978 ("EGA") impermissibly took away the role of the Executive Branch by allowing independent, non-Executive counsel the power to conduct grand jury proceedings, initiate and investigate civil and criminal proceedings, and appeal decisions when independent counsel participated. *Morrison*, 487 U.S. at 662. The Court held that the EGA did *not* violate Article II because the Executive Branch had "sufficient control over the independent counsel." *Id.*, at 696.

Critically, the Court noted that because the EGA provided that the independent counsel were appointed and removed upon request of the Attorney General, had their jurisdiction limited to what was set forth by the Attorney General, and had to abide by the Department of Justice policies, the Executive had sufficient control over the independent counsel such that the constitutional requirements of Article II were followed.

Conversely, the Supreme Court has noted that it is still an *unanswered question* whether the most commonly asserted *qui tam* statute, the FCA, is constitutional. *See Vermont Agency*, 529 U.S. at 778 ("[W]e express no view on the question whether *qui tam* suits violate Article II, in particular the Appointments Clause of § 2 and the "Take Care" Clause of § 3."). Lower courts that have applied the Morrison "control" test, however, have concluded that the stringent safeguards that vest "substantial control" of the relator's action in the Government are sufficient for the FCA to pass constitutional muster. *See Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 753 (5th Cir. 2001) (*en banc*) (finding FCA constitutional because "the Executive retains

significant control over litigation pursued under the FCA by a *qui tam* relator"); *United States ex rel. Kreindler & Kreindler v. United Techns. Corp.*, 985 F.2d 1148, 1155 (2d Cir. 1993) ("[T]he FCA *qui tam* provisions do not usurp the executive branch's litigating function because the statute gives the executive branch substantial control over the litigation.")

Section 292(b) does *not* have any of the FCA's stringent safeguards. *C.f.* 31 U.S.C. §§ 3729-3733; *Kelly*, 9 F.3d at 753-54 (discussing the FCA's procedural safeguards that give the Executive oversight and control). For example, the FCA lawsuit must "be brought in the name of the Government", and may be dismissed only with the written consent of the Attorney General. *See* 31 U.S.C. 3730. A copy of the relator's complaint must be served on the Government; the Government must be given an opportunity to investigate, intervene and take control of the lawsuit; and the Government retains the right to: (1) dismiss the action "notwithstanding the objections of the person initiating the action"; (2) settle the lawsuit "notwithstanding the objections of the person initiating the action"; (3) limit the relator's participation in the litigation; and (4) continue to be served with all papers, limit discovery, and limit recovery even if it chooses not to intervene. *Id.*

In stark contrast, §292(b) contains no safeguards to ensure that the United States' rights and interests will be represented or protected. It does not require Plaintiff to notify the Government when the action is filed or before it is served; give the Government any right to control or approve of the way the action would be prosecuted; or provide the Government with a right to intervene, control discovery or prevent FLFMC from taking positions that would impair the rights of the Government or create bad law. Moreover, §292(b) provides no mechanism for the Government to challenge any settlement, even if for substantially less than fair value, regardless of the merits of claim or the Government interest in prosecuting the claim.

Given that there is no framework in §292(b) to promote the Government's participation or control, the statute is silent as to whether a settlement between a private plaintiff and a defendant would be *res judicata* as to later claims by the Government or a different private plaintiff over the very same conduct. If *res judicata* applies, then §292(b) would permit and encourage private plaintiffs to compromise claims of the United States without any oversight on terms that the private plaintiff alone determines are reasonable and just. *See Health Possibilities*, 207 F.3d at 341 (expressing concern in the FCA context that "[w]ithout the power to consent to a proposed settlement ..., the public interest would be largely beholden to the private relator, who ... would retain sole authority to broadly bargain away government claims."). If *res judicata* does not apply, then the §292(b) defendant would never truly be able to resolve the claims because the very same conduct could be the subject of another §292(b) action later commenced by the United States or another private plaintiff.

Comparing the governmental control under the FCA to that under §292(b) and considering the Article II requirements of "substantial control," §292(b) cannot survive constitutional scrutiny. When a plaintiff with no injury, such as the case here, brings suit under §292(b), the Government's interests are not protected either by a plaintiff with aligned interests or by the inherent statutory mechanisms described in the FCA or *Morrison*. Consequently, §292 violates the requirements of Article II.

### III. CONCLUSION

For each of the independent reasons set forth above, defendant Wham-O, Inc. respectfully requests that the Court grant the Motion in its entirety.

        Respectfully submitted,

        BABST, CALLAND, CLEMENTS & ZOMNIR, P.C.

By: /s/ Heather S. Heidelbaugh
     Heather S. Heidelbaugh, Esq.
     PA I.D. No. 49989
     E-mail: hheidelbaugh@bccz.com
     Christopher M. Helms, Esq.
     PA. I.D. No. 208517
     E-mail: chelms@bccz.com
     Two Gateway Center, 6th Floor
     Pittsburgh, PA 15222
     Firm I.D. No. 812
     (412) 394-5636

     Andrew V. Jablon (*pro hac vice*)
     E-Mail: ajablon@rpblaw.com
     RESCH POLSTER & BERGER LLP
     9200 Sunset Boulevard, Ninth Floor
     Los Angeles, California 90069-3604
     Telephone:   310-277-8300
     Facsimile:   310-552-3209

Dated: <u>July 2, 2010</u>        *Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Memorandum of Law in Support of Motion to Dismiss** has been served via the Court's Electronic Filing System on this 2nd day of July, 2010, upon the following:

David G. Oberdick, Esq.
dgo@muslaw.com
Tony J. Thompson, Esq.
tjt@muslaw.com
MEYER, UNKOVIC & SCOTT, LLP
535 Smithfield Street, Suite 1300
Pittsburgh, PA 15222

/s/ Heather S. Heidelbaugh
Heather S. Heidelbaugh

*Counsel for Defendant*