## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel., and FLFMC, LLC., | ) ) ) | Civil Action No.:  10-435-AJS |
| | ) | Honorable Arthur J. Schwab |
| Plaintiffs, | ) ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| WHAM-O, INC., | ) | **Filed Electronically** |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs, by and through their undersigned counsel, respectfully submit this Memorandum in Opposition to the Motion to Dismiss filed by WHAM-O, Inc., ("WHAM-O").

I.    Introduction

This is a cause of action for Defendant WHAM-O's false marking of its Frisbee® Flying Disc and Pro Classic Frisbee® as patented in violation of 35 U.S.C. § 292, a *qui tam* statute. This matter is now before the Court on WHAM-O's Motion to Dismiss ("Motion") this case based on arguments that (i) Plaintiffs have set forth an inadequate pleading under Federal Rules of Civil Procedure ("FRCP") 9(b) and 12(b)(6), (ii) Plaintiff FLFMC, LLC ("FLFMC") lacks Article III standing, and (iii) finally, that Section 292(b) violates the Appointments and Take Care Clauses of Article II of the Constitution. Each of these asserted grounds for dismissal lacks merit, and the Motion should be denied.

First, in support of its Motion seeking dismissal for inadequate pleading, WHAM-O argues that Plaintiff FLFMC has not adequately alleged WHAM-O's intent to deceive the public with particularity. However, in United States ex rel. FLFMC, LLC, ex rel. v. Ace Hardware Corp., 2010 U.S. Dist. LEXIS 45453 (W.D. Pa. May 7, 2010), this Court denied

an analogous motion to dismiss in which the defendant there raised the same FRCP 9(b) and 12(b)(6) issue presented by WHAM-O in the present Motion. In <u>FLFMC v. Ace</u>, this Court held that allegations similar to those made against WHAM-O in this case were sufficient under the pleading standards as enunciated in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), and <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009). <u>Ace</u>, 2010 U.S. Dist. LEXIS 45453. at *8. Moreover, in this case, the allegations regarding WHAM-O's intent to deceive are even more apparent than the allegations made against the defendant in <u>FLFMC v. Ace</u>, because in addition to the allegations that WHAM-O continued marking and advertising its Frisbee® Flying Disc twenty-five years after the expiration of one patent, Plaintiff FLFMC also alleges that WHAM-O marked and advertised its Pro Classic Frisbee® with a second patent number that did not cover the product. Accordingly, WHAM-O's motion under FRCP 9(b) and 12(b) (6) must be dismissed.

WHAM-O argues next that FLFMC lacks Article III standing because FLFMC has not alleged any direct injury and it cannot sue based solely upon the government's generalized sovereign right to have Section 292 obeyed. As noted by the Supreme Court in <u>Vermont Agency of Natural Resources v. United States ex rel. Stevens</u>, 529 U.S. 765 (2000), an alleged violation of the false marking statute itself constitutes a sufficient injury to the United States to provide standing for FLFMC. Plaintiff FLFMC has alleged that WHAM-O violated Section 292 by marking, mismarking and/or advertising its Frisbee® Flying Disc and Pro Classic Frisbee® Disc with patent numbers which either expired twenty-five years ago or never applied to the product with the intent to deceive the public. Complaint, ¶¶ 16, 17, 19, and 20. Such injury having been pled, Plaintiff FLFMC now properly invokes the standing of the United States as the assignee of its claims against

WHAM-O. Accordingly, the portion of WHAM-O's Motion seeking dismissal based upon a lack of Article III standing must be dismissed

Finally, WHAM-O's assertions that Section 292 is unconstitutional - because it violates the "Take Care" and "Appointments" Clauses of Article II of the United States Constitution - are equally without merit. The Appointments Clause does not apply to Section 292 because it does not create "officers" as described within that clause, and is thus inapplicable. Further, Section 292 does not violate the Take Care Clause because, *inter alia*, its enactment by the First Congress and its long history strongly supports its constitutionality. For the reasons that follow below, WHAM-O's arguments in support of its Motion are unsupported by the facts or the law, and its Motion must be denied.

II.      Plaintiff FLFMC Has Sufficiently Pled WHAM-O's Intent To Deceive

         1.      Plaintiff FLFMC is not required to plead intent to deceive with particularity.

WHAM-O argues that plaintiff FLFMC's Complaint should be dismissed because it fails to meet the heightened pleading standards of FRCP 9(b) with respect to WHAM-O's intent to deceive. In support of its argument, WHAM-O directs this Court to the decision in Juniper Networks v. Shipley, 2009 U.S. Dist. LEXIS 40978 (N.D. Cal. May 13, 2009). Juniper, however, is not controlling in this District, and there are conflicting views on whether or not a false marking claim is subject to the heightened pleading requirements of FRCP 9(b). See, e.g., Third Party Verification, Inc. v. Signaturelink, Inc., 492 F. Supp. 2d 1314, 1327 (M.D. Fla. 2007) ("There is no case law that has required the Rule 9 level of pleading to claims for false marking."); Song v. PIL, LLC, 2010 U.S. Dist. LEXIS 38874 at 4 (N.D. Ill. Apr. 14, 2010) ("courts are split on [whether claims under § 292 are subject to the heightened pleading requirements of FRCP 9(b)]."). More importantly, in FLFMC v. Ace, 2010 U.S. Dist. LEXIS

45453, this Court held that Plaintiff FLFMC's similar allegations there were sufficient under FRCP 8(a), in spite of defendant's arguments that FRCP 9(b) applied.

Further, Plaintiffs should not be required to plead with particularity in this case, especially at this stage, given the nature of a false marking claim and Plaintiffs' lack of access to the required information. Evidence which has been deemed relevant to the defendant's requisite intent, in most cases, comes directly from the defendant or its agents. See, e.g., DP Wagner Mfg. v. Pro Patch Sys., 434 F. Supp. 2d 445, 456-458 (S.D. Tex. 2006) (proffering the deposition testimony of the defendant's President in support of its motion for summary judgment on its false marking claim.); Smith Welding Equip. Corp. v. Pearl, 21 F.R.D. 196, 197 (W.D. Pa. 1956) (proffering affidavits of company officials in support of its motion to dismiss defendant's false marking counterclaim.). Accordingly, Plaintiffs' Complaint should not be held subject to FRCP 9(b), and WHAM-O's Motion to Dismiss on this ground should be denied.[1]

2.   Plaintiffs' complaint is sufficient to satisfy the standards set forth in FRCP 8(a).

WHAM-O also alleges that Plaintiffs' Complaint fails to adequately plead WHAM-O's intent to deceive under the default standards of FRCP 8(a). Curiously, WHAM-O makes no reference to this Court's decision in FLFMC v. Ace, although it is directly on point. In FLFMC v. Ace, Plaintiff FLFMC similarly alleged that the defendant continued to mark a product with a well-expired patent, implying that the item was patented with the intent to deceive. Defendant filed a motion to dismiss arguing, inter alia, that Plaintiff FLFMC failed to adequately plead the

---

[1]     To the extent WHAM-O suggests that Plaintiffs' are required to plead with particularity because some courts have required such pleading under the false claims act, the Third Circuit, in U.S. ex rel. Schmidt v. Zimmer, Inc., 386 F.3d 235, 242 n.9 (3d Cir. 2004), noted that "defects as to particularity [in a complaint under the False Claim Act] could be cured easily by amending the complaint to specify the precise [] reports that were alleged to be false." (emphasis added). Thus, even if this Court were to apply the heightened pleading standards of the false claims act in this case, the fact that Plaintiffs have identified the precise patents, products, and the entity responsible for the false marking, arguably, would be sufficient.

defendant's intent to deceive. In response, this Court, after a thorough analysis of the Supreme Court's decisions in Twombly and Iqbal, held:

> the allegations of the complaint, when taken as true, allows the Court to draw a reasonable inference that [defendant] was at least complicitous in the alleged false marking of the [product] in violation of 35 U.S.C. § 292, a *qui tam* statute, and that the complaint, although not overly detailed, meets the standards enunciated in *Twombly* and *Iqbal.*

2010 U.S. Dist. LEXIS 45453, at *7-*8.

Thus, in this case, Plaintiffs are only required to allege the existence of a misrepresentation by WHAM-O, coupled with sufficient evidence that the misrepresentation was made with knowledge of its falsity[2]. Clontech Labs., Inc. v. Invitrogen Corp., 406 F.3d 1347, 1352 (Fed. Cir. 2005) (such allegations are "enough to warrant drawing the inference that there was fraudulent intent.").

These required elements are set forth in the Complaint. First, FLFMC alleges "the fact of misrepresentation" by identifying the Frisbee® Flying Disc, marked with U.S. Patent No. 3,359,678 ("the '678 patent"), being sold by WHAM-O twenty-five years after the expiration of the patent. Complaint, ¶¶ 6, 8-13. Additionally, FLFMC alleges another misrepresentation by identifying the Pro Classic Frisbee® Disc as being mismarked with Patent No. 3,354,678 ("the '4,678 patent") and being sold by WHAM-O. Complaint ¶¶ 12, 14, 16, 19. Second, FLFMC alleges that WHAM-O's misrepresentations "imply[ed] that the items were patented" and that WHAM-O did so "for the purpose of deceiving the public." Complaint ¶¶ 16, 17, 19, 20.

---

[2] WHAM-O attempts to suggest that more is required at this stage by referencing a portion of the Federal Circuit's opinion in Pequignot v. Solo Cup Co. which states that "knowledge that a marking is false is insufficient to **prove** intent if [Defendant] can **prove** that it did not consciously desire the result that the public be deceived." Pequignot v. Solo Cup Co., 2010 U.S. App. LEXIS 11820 (Fed. Cir. June 10, 2010). (emphasis added). That decision, however, is inapposite because it is addressing the burden of proof required at the summary judgment stage, rather than what constitutes a sufficient pleading. Moreover, it is well settled that "[t]he mere assertion by a party that it did not intend to deceive will not suffice to escape statutory liability." Clontech Labs., Inc. v. Invitrogen Corp., 406 F. 3d 1347, 1352 (Fed. Cir. 2005).

WHAM-O's repeated sale and advertisement of the mismarked Pro Classic Frisbee® Disc, and its repeated sale and advertisement of the Frisbee® Flying Disc marked with a patent number that expired twenty-five years ago, coupled with its purchase by and independence from Mattel (Complaint, ¶¶ 8-10), are enough to "warrant drawing the inference that there was fraudulent intent." Clontech Labs., 406 F.3d at 1352. Accepting Plaintiffs' allegations as true, this Court can reasonably infer that WHAM-O falsely marked its frisbees with the intent to deceive.

Further, WHAM-O's intent to deceive can be inferred from the significant length of time that the Frisbee® Flying Disc has been marked with the number of an unenforceable patent.[3] The present case is not a matter of a false marking suit filed one day after the expiration of a patent; WHAM-O obtained independence from Mattel in 1997, *thirteen years* after the patent at issue here expired. Complaint ¶ 10. Reasonable due diligence by the investors who purchased WHAM-O should have revealed that WHAM-O was marking the Frisbee® Flying Disc with an expired patent number. WHAM-O's continued use of the patent thirteen years after it became independent, and nearly twenty-five years after the patent at issue expired, clearly is sufficient to create the inference of WHAM-O's intent to deceive the public. Accordingly, WHAM-O's Motion to Dismiss on this ground also should be denied.

III.     Plaintiff FLFMC Satisfies All Requirements For Article III Standing

      1.     It is well-settled that qui tam plaintiffs have article III standing.

In Vermont Agency, 529 U.S. 765 (2000) the Court made clear that Plaintiff FLFMC has standing to pursue this action. After properly identifying § 292 as a *qui tam* statute, 529

---

[3] See DP Wagner Mfg. v. Pro Patch Sys., 434 F. Supp. 2d 445, 452 n.3 (S.D. Tex. 2006) ("The patent marking statute (35 U.S.C. § 287) requires marking only with the patent number. Because issue date is not given, the expiration date cannot readily be determined. Therefore, a **strong case** can be made for finding **culpable mismarking** when a person intentionally continues to mark articles with the number of an expired patent.") quoting Chisum on Patents, § 20.037[7][c][vii], at 20-657.

U.S. at 769 n.1, the Court went on to address the standing requirements under such *qui tam* statutes. The Court concluded that the plaintiff relator need not demonstrate a direct injury to himself in order to proceed with the *qui tam* action. Instead, the United States' injury suffices to confer standing. Id. at 772-778. Such injury may take the form of "the injury to [the United States'] sovereignty arising from violation of its laws and the proprietary injury resulting from the alleged fraud." Id. at 765. A *qui tam* statute effects a "partial assignment" from the government to the *qui tam* relator, which thereby confers standing upon the relator to file suit. Id. at 773.

Although the Court's holding was limited to *qui tam* relator plaintiffs under the Federal Claims Act, numerous courts have held that *qui tam* plaintiffs bringing a § 292 claim also have Article III standing. See e.g., Juniper Networks v. Shipley, 2010 U.S. Dist. LEXIS 24889, *17 (N.D. Ca. 2010), quoting Vermont, at 773-74 (Analyzing a motion to dismiss in a false marking case and noting "in *qui tam* actions, the injury need not be suffered by the relator; injury in fact to the United States is sufficient."); Pequignot v. Solo Cup Co., 640 F. Supp. 2d 714, 717 (E.D. Va. 2009) ("First, at least facially, by allowing 'any person' to sue for false marking, § 292(b) confers standing on anyone to sue, regardless of whether he or she has been personally affected by the false marking... .").

Moreover, there is a breadth of authority, pre-dating Vermont, holding that a *qui tam* § 292 plaintiff has Article III standing. See, e.g., Patents: False-Marking Litigation, 26 Fed. Proc. L. Ed. § 60:1239 ("Any person may sue for the penalty provided by the false-marking statute, and a party need not have suffered any special or private injury from the act alleged as constituting a violation of the act in order to sue to recover the penalty."); Am. Jur. 2d, Patents, § 1087 (same); Fear v. Horner Sales Corp., 10 F.R.D. 25, 27 (W.D. Pa. 1950)

(plaintiff "brings [the false-marking action] as informer and need not show that he has been injured by the acts of the defendant"); Calderwood v. Mansfield, 71 F. Supp. 480, 481 (D.C. Cal. 1947) ("[I]njury to private interest is not pertinent.").

The Supreme Court's decision in Vermont Agency and its progeny are dispositive. By its express terms, § 292 effects an assignment of the United States' claims to the *qui tam* plaintiff, and, thus, Plaintiff FLFMC must only demonstrate that the United States has suffered a constitutionally cognizable injury. As described below, WHAM-O's violation of § 292 plainly constitutes an injury in fact to the United States, and thus Plaintiff FLFMC has standing to pursue this action.

2.      Plaintiffs' allegations are sufficient to establish the United States' injury in fact.

WHAM-O contends that without an allegation of injury in fact, Plaintiff FLFMC fails to establish an interest of the United States that is assignable to a *qui tam* plaintiff. To the contrary, however, "[t]he actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." Warth v. Seldin, 422 U.S. 490, 500 (1975); Vermont Agency, 529 U.S. at 773. In determining whether there is injury in fact, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [the court] 'presume[s] that general allegations embrace those specific facts that are necessary to support the claims.'" Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (citations omitted). This Court specifically addressed this same issue in FLFMC v. Ace, and held that "it would be premature to decide [defendant's] standing and other issues at this early stage of the proceedings, without allowing plaintiff an opportunity to develop the record through the discovery process." 2010 U.S. Dist. LEXIS 45453 at *8.

Notwithstanding the above, WHAM-O argues that under <u>Stauffer v. Brooks Brothers, Inc.</u>, 615 F. Supp. 2d 248 (S.D.N.Y. 2009), a *qui tam* relator plaintiff must plead and establish an injury in fact to the United States to have standing. WHAM-O's reliance upon <u>Stauffer</u> is misplaced for the following reasons. First, the <u>Stauffer</u> decision is not controlling in this District, and this Court previously declined to adopt its rationale in <u>FLFMC v. Ace</u>. Additionally, insisting that a *qui tam* relator plaintiff under § 292 must establish injury in fact to the United States – beyond the clearly recognized injury in fact resulting from WHAM-O's violation of the statute – is contrary to the Federal Circuit's controlling interpretation of the statute. <u>Forest Group, Inc. v. Bon Tool Co.</u>, 590 F.3d 1295, 1302-1303 (Fed. Cir. 2009) (identifying false markings as causing injury by, *inter alia*, deterring innovation and stifling competition; dissuading potential competitors from entering the market; deterring scientific research; and also as causing unnecessary investment in design around and costs incurred in analyzing the validity or enforceability of a patent; "these injuries occur *each time an article is falsely marked*") (emphasis added). Thus, insofar as the Federal Circuit has interpreted Congress' intent in enacting the statute to prevent injuries to the public, and the statute permits "any person" to bring such an action, a violation of the statute itself is the only injury a *qui tam* relator plaintiff need allege.

Finally, the <u>Stauffer</u> rationale is also not controlling because the District Court decision has been appealed to the Federal Circuit. Further, as a result of the District Court's holding in <u>Stauffer</u>, the United States attempted to intervene to, "defend the statute and the government's interest in seeing [§ 292] enforced." <u>Stauffer v. Brooks Brothers, Inc.</u>, 2009 U.S. Dist. LEXIS 51166 at *2 (S.D.N.Y. June 15, 2009). Moreover, it is noteworthy that, although it has been over

a year since the <u>Stauffer</u> decision was issued, no other court has adopted the Southern District of New York's reasoning - despite a significant increase in the number of false marking suits filed[4].

As the Court in <u>Vermont Agency</u> observed, the injury to the United States' sovereignty arising from the violation of its laws unquestionably gives rise to an Article III injury to the Government.  529 U.S. at 771.  Plaintiff FLFMC has alleged sufficient facts to demonstrate that WHAM-O violated § 292 and further has requested a declaration of said violation within its prayer for relief.  <u>See</u> Complaint, ¶¶ 6-8, 12-14, 16, 17, 19, 20.  Presuming Plaintiffs' pleadings are true, as this Court is required to do, and recognizing violations of the laws of the United States, themselves, as being an injury to the United States, Plaintiff FLFMC has sufficiently alleged that the United States has suffered injury in fact for purposes of Article III standing.

Therefore, under the Supreme Court's decision in <u>Vermont Agency</u> and its progeny, an alleged violation by WHAM-O of Section 292 is sufficient to establish an injury in fact for Article III standing.  <u>See</u> <u>also</u>, "Brief of the United States As Intervenor Defending The Constitutionality Of 35 U.S.C. § 292" ("U.S. Brief") at 10-11, (arguing §292 *qui tam* relators have Article III standing in accordance with <u>Vermont Agency,</u> for a sovereign, rather than propriety, injury to the Government.) (Attached hereto as Ex. "A").   Accordingly, WHAM-O's Motion to Dismiss on the grounds that Plaintiffs failed to establish an injury in fact must be denied.

3.     <u>The injury in fact provides the necessary nexus between marking and harm.</u>

WHAM-O asserts that because Plaintiff FLFMC has not alleged any facts connecting its

---

[4] <u>Compare</u> Donald W. Rupert, <u>Trolling for Dollars: A New Threat to Patent Owners,</u> 21 No. 3 Intell. Prop. & Tech. L.J. 1 (2009) (five false marking cases filed between 1997 and 2009) <u>with</u> Scott A. Herbst and David Albagli, <u>Strategies for Litigating False Marking Cases,</u> Daily Journal (Mar. 30, 2010)  (<u>available at</u> http://www.finnegan. com/resources/articles/articlesdetail.aspx? news=6b189476-abfe-4316-8b23-cd6737cb9afb) (more than 100 false marking suits filed since the decision in <u>Forest Group</u>).

marking on the products at issue to any harm, Plaintiff FLFMC has failed to meet the causation and redressability requirements of Art. III standing.  Again, WHAM-O's argument misses the mark and ignores the fact that §292 assigns the government's injury to a relator, who then attempts to redress said injury by bringing a *qui tam* action.

As previously noted, the Supreme Court in <u>Vermont Agency</u> held that injury to the United States' sovereignty due to a violation of its laws is a cognizable injury.  529 U.S. at 771. Thus, in this case, Plaintiffs' allegation that WHAM-O falsely marked its frisbees in violation of § 292 is sufficient to establish a nexus between WHAM-O's wrongful conduct and the alleged injury.  Put another way, the causation is inherent in the offending act.   Lastly, there is not redressability issue because "[t]he qui tam action is for redress of an injury to the government" <u>Stalley v. Methodist Healthcare</u>, 517 F.3d 911, 917 (6th Cir. 2008), and as such, the Court, consistent with the action taken in <u>Ace</u> should not grant WHAM-O's Motion to Dismiss for lack of standing[5].

4.     <u>Plaintiff FLFMC has prudential standing to bring this action.</u>

WHAM-O argues that FLFMC lacks prudential standing because it is merely asserting a generalized right to have Section 292 obeyed.  WHAM-O's argument lacks merit.  First, §292 specifically provides that "any person" may bring this action and it is well settled that an "explicit grant of authority to bring suit 'eliminates any prudential standing limitations and significantly lessens the risk of unwanted conflict with the Legislative Branch.'" <u>FEC v. Atkins</u>, 524 U.S. 11, 20 (1998) (dismissing defendant's prudential standing challenge and noting "Congress has specifically provided in FECA that "any person who believes a violation of this

---

[5] To the extent WHAM-O suggests Plaintiff FLFMC must allege more facts regarding injury to the public or competition to establish Art. III standing, dismissal of this case at this stage would not be the appropriate action. Rather, Plaintiff FLFMC should be provided an opportunity to develop more information through discovery.  See <u>FLFMC v. Ace</u>, 2010 U.S. Dist. LEXIS 45453.

Act... has occurred, may file a complaint with the Commission." § 437g(a) (1)), quoting, Raines v. Byrd, 521 U.S. 811, 858 n.3 (1997).

Moreover, as previously stated, the Supreme Court's decision in Vermont Agency and its progeny establishes that § 292, by its express terms, effects an assignment of the United States' claims to the qui tam plaintiff. In Sprint Communs. Co., L.P. v. APCC Servs., 554 U.S. 269, 128 S. Ct. 2531, 2545 (U.S. 2008), the Supreme Court held that a plaintiff bringing an action based upon a third-party's injury, which was subsequently assigned to the plaintiff, establishes prudential standing because plaintiff "in other words, [is] asserting first-party, not third-party, legal rights." Accordingly, Plaintiff FLFMC has satisfied the prudential standing requirement and WHAM-O's Motion on this ground must be denied.

IV.    Section 292(b) Does Not Violate Article II of the Constitution

1.    Section 292 does not violate the Appointments Clause.

WHAM-O asserts that Section 292 violates the Appointments clause because its vests a private party, as opposed to the Executive Branch, with the primary responsibility for conducting civil litigation in the courts of the United States for vindicating public rights. WHAM-O's argument is incorrect because *qui tam* relators under §292 are not "officers" as defined by that clause.

The Appointments Clause provides, *in part*, that "Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. Art. II, § cl. 2.   It is well settled, that the term "officer" as used in the Appointments Clause "embraces the ideas of tenure, duration, emolument, and duties, and the latter were continuing and permanent, not occasional or temporary." United States v. Germaine, 99 U.S. 508, 511-12, 25 L. Ed. 482

(1878).  None of these "ideas" are present in Section 292.

More directly, a Section 292 relator's position is without tenure, duration, continuing emolument, or continuous duties.  Therefore, as a matter of law, the Appointments Clause is inapplicable.  See Auffmordt v. Hedden, 137 U.S. 310, 327, 34 L. Ed. 674, 11 S. Ct. 103 (1890) (noting, "[the merchant appraiser's] position is without tenure, duration, continuing emolument, or continuous duties, and he acts only occasionally and temporarily. Therefore, he is not an 'officer' within the meaning of the clause of the constitution referred to."); See also, Riley v. St. Luke's Episcopal Hosp., 252 F.3d 749, 757-58 (5th Cir. 2001) (en banc) (holding the FCA's *qui tam* provisions do not violate the Appointments Clause because *qui tam* relators are not officers of the United States.); United States ex rel. Taxpayers Against Fraud v. General Elec. Corp., 41 F.3d 1032, 1041 (6th Cir. 1994) (holding Appointments Clause is not applicable because a *qui tam* relator is not vested with any governmental power);U.S. Brief, Ex. A at 24-28. (same).

2.    Section 292 does not violate the Take Care Clause of Art. II.

WHAM-O argues next that Section 292 violates the Take Care Clause because it does not contain sufficient safeguards to ensure that the Government maintains sufficient control over the litigation pursued under Section 292 by a *qui tam* relator.  In support of its argument, WHAM-O relies heavily upon the  decision of the United States Court of Appeals for the Ninth Circuit in United States ex rel. Kelly v. Boeing Co., 9 F.3d 743 (9th Cir. 1993), which held that the False Claims Act (FCA), another *qui tam* statute, did not violate Art. II because the FCA contains a number of procedural safeguards that provide the Executive oversight and control.  There is no need, however, for this Court to look to the Ninth Circuit for any guidance on this issue, because of the long history of the Court's enforcement of *qui tam* actions and the more recent district

court decisions in <u>Zojo Solutions, Inc. v. Stanley Works</u>, 2010 U.S. Dist. LEXIS 46407 (N.D. Ill. May 12, 2010) and <u>Pequignot v. Solo Cup Co.</u>, 640 F. Supp. 2d 714 (E.D. Va. 2009), both of which specifically addressed and rejected the precise arguments raised by WHAM-O. Indeed, although WHAM-O contends that the Government lacks control over Section 292 actions, it fails to acknowledge that the government, on at least six occasions, has intervened solely to defend the constitutionality of Section 292. <u>See</u> Ex. A, and "Supplemental Brief Of The United States As Intervenor Defending The Constitutionality Of 35 U.S.C. § 292" ("U.S. Supp. Brief."), at p. 1. (Attached hereto as Ex. "B").

The District Court in <u>Solo Cup</u> rejected the exact argument advanced by WHAM-O for the following reasons. First, the Court in <u>Solo Cup</u> noted: that the long history of *qui tam* statutes was "highly persuasive as to their constitutionality" because "[i]t is unlikely that the framers would have written a Constitution that outlawed this practice, and then immediately passed several *qui tam* laws that unconstitutionally encroached on Executive Power." 640 F.Supp. at 727. <u>See also</u>, U.S. Brief, Ex. A, pgs. 5-10 (providing a detailed discussion of the history and enforcement of *qui tam* actions); <u>Kinglsey Books, Inc. v. Brown</u>, 354 U.S. 436, 441 (1957) (acknowledging Congress' option to use *qui tam* actions as a means to deter proscribed conduct.)

Additionally, in <u>Solo Cup</u> the District Court held that "it is not necessary for <u>§292(b)</u> to meet the demanding standard applied by the Supreme Court in *Morrison* to withstand an Article II challenge, given that the intrusion of <u>§292(b)</u> into the Executive Branch power is minor in comparison[6]." 640 F.Supp. at 727 (<u>citing</u> <u>Riley v. St. Luke's Episcopal Hosp.</u>, 252 F.3d 749, 755 (5th Cir. 2001) (en banc) (holding that "the *Morrison* control test... is simply not dispositive

---

[6] Specifically, the court in <u>Solo Cup</u> noted that unlike the prosecutor in <u>Morrison</u>, a § 292 relator pursues a civil action, not a criminal one; the relator under § 292(b) must do so at his own expense; and that § 292(b) does not bar the government from initiating its own action, criminal or civil, to enforce the substantive false marking provisions of § 292(a). <u>Solo Cup</u>, 640 F. Supp. 2d at 726-727.

of [a challenge to the FCA], as it involves an entirely different lawsuit and requires entirely

different control mechanism.")).

Lastly, the Solo Cup court recognized that:

> [D]espite the lack of control mechanisms in § 292(b) itself, the Executive Branch is not without the ability to assert its interests in a § 292(b) *qui tam* action. The clerks of federal courts are required to notify the Director of the United States Patent and Trademark Office of *any* patent suits within one month of their filing. *See* 35 U.S.C. § 290. The United States may intervene in a *qui tam* action, either as of right, *see* Fed. R. Civ. P. 24(a)(2), or with a court's permission, *see* Fed R. Civ. P. 24(b). ... Finally, the United States may apply for a protective order if the relator's action interferes with a government investigation or prosecution. *See* Fed. R. Civ. P. 26(c).

Id. at 727-728; See also, U.S. Brief, Ex. A, at 23-25, fn. 11 (listing additional safeguards); U.S.

Supp. Brief, Ex. B. at 7-8 (arguing that certain statutes and FRCPs provide the government with

"adequate and necessary tools" to exert control over a §292 action.).

Similarly, in Zojo Solutions, Inc. v. Stanley Works, the District Court for the Northern

District of Illinois, *sua sponte*, rejected the same Article II argument presented by WHAM-O

stating that the Federal Circuit, in Bon Tool, effectively answered and rejected the defendant's

argument because "the Federal Circuit ... would have been obligated to raise and address [a

subject matter jurisdictional problem] *sua sponte*. In a sense, then, that court's failure to speak

of any potential problem of unconstitutionality could be viewed as confirming the validity of the

statute." 2010 U.S. Dist. LEXIS 46407, *6 (N.D. Ill. May 12, 2010). Likewise, the Federal

Circuit declined to raise any issues with Section 292 and Art. II in the Solo Cup appeal, even

though the issue was specifically addressed by the district court. Solo Cup, 2010 U.S. App.

LEXIS 11820 (Fed. Cir. 2010). Accordingly, WHAM-O's Motion to Dismiss must be denied as

to WHAM-O's constitutional arguments as well.

## III.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that Defendant's Motion be denied in its entirety.

Respectfully submitted,

*s/David G. Oberdick*
David G. Oberdick, Esquire
Pa. I.D. No. 47648
Email:  dgo@muslaw.com

Tony J. Thompson, Esquire
Pa. I.D. No. 204609
Email:  tjt@muslaw.com

Meyer, Unkovic & Scott LLP
1300 Oliver Building
Pittsburgh, PA  15222
(412) 456-2800

**Attorneys for Plaintiffs**

Dated:  July 14, 2010